[No. 13970.  Department Two.  October 16, 1917.]

PASCO RECLAMATION COMPANY, *Appellant,* v.
FRANKLIN COUNTY, *Respondent.*[1]

TAXATION—IRRIGATION PLANT—VALUATION FOR ASSESSMENT — EX-
CESSIVENESS.  The valuation for taxation of a pumping plant and
distributing system at $110,000 is not arbitrary and excessive, from
the fact it was incumbered with contractual obligations and had no
earning power for its owners, where it appears that it cost $200,000
and could not be reproduced for less than the valuation fixed, and
was capable of irrigating 4,000 acres of land.

Appeal by plaintiff from a judgment of the superior court
for Franklin county, Linn, J., entered July 18, 1916, in
favor of the plaintiff, in an action to enjoin the collection of
a tax, tried to the court.  Affirmed.

*Driscoll & Leonard* and *Richards & Fontaine,* for appel-
lant.

PARKER, J.—The plaintiff, Pasco Reclamation Company,
seeks a judgment reducing the assessed valuation of its pump-
ing plant and distributing system as determined by the as-
sessor and board of equalization of Franklin county in the
year 1914, to the end that it be relieved from the payment
of taxes computed upon the valuation so determined.  Trial
in the superior court for that county resulted in a judgment
determining that the valuation of the property at $100,000,
fixed by the county authorities for taxation purposes for the
year 1914, was so excessive as to evidence arbitrary action
on their part, that the assessment be reduced to $55,000, and
that the county treasurer accept payment of taxes on the
property computed upon such reduced assessed valuation.
The plaintiff, feeling aggrieved by this judgment, in that it
is entitled to a greater reduction, has appealed to this court.

Appellant's plant cost to construct, in the years 1909 and
1910, $200,000, the assessing officers, taking this as the

[1]Reported in 167 Pac. 1094.

actual value of the plant in the year 1914, and having adopted a fifty per cent valuation of other property in the county as the assessed valuation for that year, assessed ap· pellant's plant at $100,000. The superior court found that the plant had depreciated in value $90,000, so that its real value in 1914 was $110,000, and adopting the fifty per cent valuation basis, as the assessing officers had in assessing other property in the county, adjudged the correct assessed value to be $55,000.

It is contended in behalf of appellant that the evidence shows that its plant is of only nominal value, and tendered payment of taxes on an assessed valuation of $1,000. The evidence seems to us to render it plain that the plant could not have been produced in the year 1914 in its then condition, making due allowance for depreciation, for less than $110,-000. Looking to its physical value apart from its earning power, we think there is little room for arguing that it was not then actually worth $110,000. A number of witnesses for appellant testified in substance that the plant had no value in 1914, or since then. This view of these witnesses, however, is based wholly upon the want of earning power of the plant in the hands of appellant, and a want of a market for its sale. The basis of all this testimony is, in substance, the same as expressed by one of these witnesses, as follows:

"The plant originally cost $200,000, but at present it has no valuation because its contractual obligations are so great that it leaves no possible income. If it had no contractual obligations and were a going concern it would have a value nominally equal to the original cost, less depreciation."

This is little else than saying that a piece of property is of only nominal value because it is encumbered so that all of its income or earning power goes to someone else other than its legal owner. Appellant's obligations consist of perpetual water service contracts for the irrigation of some four thousand acres of land which it has become obligated, as a public service corporation, to serve at a fixed compensation, amount-

ing, we assume, to less than sufficient to pay the cost of maintenance of the plant, and it has no additional water for sale—in other words, no additional source of revenue. This may argue that the plant is worth nothing to appellants, but such an argument would exempt from taxation vast quantities of property which plainly would not be entitled to such exemption. It is quite beyond us to understand how an irrigating plant, presumably capable of irrigating some four thousand acres of arid land, can be said to be of only nominal value because of the fact that its owner has such obligations which are, in effect, encumbrances upon the plant as to render its operation unprofitable.

It is argued that the value of this plant is merged in the value of the land it serves, and that, by the increased value of the land so caused, the county is, in effect, assessing and taxing such value when it assesses and taxes the land. There is a sense in which this is probably true, but substantially the same thing occurs when a railroad comes into and becomes the principal factor in developing a new country, yet we never have heard of a railroad escaping taxation, or even of its having its taxes reduced, because of the fact that the value it contributed to the lands in its neighborhood was being taxed in the taxing of the land. It may be said that the land and its value are here more intimately related to appellant's plant than land which is enhanced in value by its accessibility to a railroad under the conditions suggested, but it is not to be lost sight of that the title to this plant is in appellant and not in the owners of the land it serves. It is, in other words, a separate ownership from the ownership of the land. It is unlike a mere water right in connection with land, furnished by the power of nature, to wit, gravity.

It may be that there is here produced some inequality and injustice, and possibly something that approaches duplicate or double taxation, but we fail to see that there is anything more than that inevitable inequality that attends more or

less all taxation of property.   As well said by Judge Cooley in his work on Taxation, vol. 1 (3d ed.), at page 390:

"It cannot be too distinctly borne in mind that any possible system of tax legislation must inevitably produce unequal and unjust results in individual instances; and if inequality in result must defeat the general law, then taxation becomes impossible."

We cannot see our way clear to disturb the judgment of the trial court; it is therefore affirmed.

ELLIS, C. J., HOLCOMB, FULLERTON, and MOUNT, JJ., concur.